# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

PAUL C. THOMPSON, JR.,           )
                **Plaintiff,**     )     **CASE NO. 7:17CV00010**
                         )
**v.**                      )     **MEMORANDUM OPINION**
                         )
**H. W. CLARKE,** *et al.*        )     **By: Norman K. Moon**
              **Defendants.**    )     **United States District Judge**
                         )

Paul C. Thompson, Jr., an inmate proceeding *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging among other things, retaliation for prior lawsuits and prison grievances through deliberate indifference to his serious medical needs.[1] The defendants to the medical claims—a doctor and four nurses ("the medical defendants") have filed motions to dismiss. For the reasons stated, I conclude that these motions must be granted.[2]

## I.

The medical defendants encountered Thompson while he was confined at River North Correctional Center ("River North"), operated by the Virginia Department of Corrections ("VDOC"). He alleges, generally, that they provided inadequate treatment for his blood pressure and knee problems as a means of retaliating against him for filing prisoner civil rights lawsuits

---

[1] Thompson's complaint names more than twenty other defendants who allegedly retaliated against him and punished him in various ways. The other defendants have filed separate dispositive motions that I will separately address.

[2] The medical defendants have also filed motions for summary judgment, arguing that Thompson's claims must be dismissed for failure to exhaust available administrative remedies (Docket Nos. 46, 64, and 68). *See* 42 U.S.C. § 1997e(a). Because I conclude that their motions to dismiss may be granted, however, I will dismiss the summary judgment motions without prejudice.

and administrative remedy forms. His claims are based on the following alleged incidents at River North.[3]

On November 17, 2014, Thompson suffered injuries when he fell out of his seat in a medical transport van because of an officer's unsafe driving. After this incident, Thompson "made numerous requests to have access to the medical records involving this incident and they have [been] denied and/or not responded to by Defendants D. Wells, RN, and C. Hall, RNCB," medical supervisors at River North. Compl. ¶ 131, Docket No. 1.

On December 22, 2014, Dr. Potter saw Thompson for his complaints of low blood pressure ("BP") "most likely caused by over medication of his BP." *Id.* at ¶ 152. When getting up from a prone position, Thompson would feel like he was about to black out. Dr. Potter wrote an order that the medical staff should check Thompson's BP every day. Nurses L. Tolbert and Shaffer often "allocated Thompson's medication" while he was confined "in (A-2) pod."[4] *Id.* at ¶¶ 26, 34.

---

[3] Thompson's complaint lacks a chronological description of events, a critical part of a proper complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that plaintiff's obligation to provide the "grounds" of his "entitlement to relief" under Fed. R. Civ. P. 8(a) "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and as such, "[f]actual allegations must be enough to raise a right to relief above the speculative level") (citations omitted). Instead, Thompson's complaint scatters partial descriptions of occurrences, often without dates or defendants' names, in multiple places throughout the 100-page pleading. In his responses to the defendants' motions, Thompson contends that all necessary details about the events at issue were provided to the defendants in his many grievance documents, essentially incorporating these documents by reference into his complaint. Thus, for the sake of clarity, this factual summary is based on Thompson's submissions as a whole, including copies of his informal complaints and grievances now in the record. *See gen.* Pl.'s Exhibits ("Ex."), Docket No. 130; B. Walls Affs., Docket Nos. 48-1, 65-1, and 69-1. In citations to the record, I will use the page numbers from the court's digital version of the document.

[4] Thompson referred to Nurse Shaffner in the complaint, but later submissions indicate that the correct name is Shaffer.

On December 28, 2014, Thompson filed an informal complaint that nurses were checking his BP immediately after giving him his BP medication. According to Thompson, "[t]he medication had no time to get in [his] system, so the BP's taken were meaningless to the issue they were ordered." Pl.'s Ex., at 15, Docket No. 130. Nurse Wells responded that the doctor had ordered the daily BP checks until January 4, 2015, when the doctor would review his BP history. Nevertheless, Thompson filed several grievances about the timing of his daily blood pressure checks being ineffective monitoring of his condition. The grievances were rejected because he did not state how he had been harmed. The grievance coordinator noted in the margin, "Per Medical your blood pressures were taken per Doctor's order." *Id.*, at 17. Without access to his medical records, Thompson was unable to verify this explanation. Over the next weeks, he refused to take several doses of his blood pressure medication.

On January 20, 2015, while Thompson was on suicide precautions, he blacked out and fell, hitting one side of his face on the concrete floor of his cell, which caused bruising. When he complained about the fall and blamed it on low blood pressure, he was scheduled to see the doctor for reevaluation. *Id.*, at 47. In early February, Dr. Potter discontinued his blood pressure medication. *Id.*, at 35. At that time, the medical staff reported that according to Thompson's medical records, he had been only fifteen percent compliant with the doctor's ordered medication schedule.

In January 2015, Thompson complained that the nurses had begun crushing and mixing his medications. This practice prevented him from knowing what medications or dosages he was receiving and from refusing a particular medication or dose. Nurse Hall responded that Thompson's medications were all placed in one envelope and then labeled with his name, inmate

number, and housing unit for safety and security. *Id.*, at 28. Thompson was also informed that he could refuse a particular medication by submitting a request to the medical unit in advance.

On January 23, 2015, Nurse Tolbert brought Thompson his medication and offered him two of his blood pressure pills, although his prescribed dosage was one pill.[5] Thompson refused to ingest the pills and gave them to an officer.

On January 14, 2015, Dr. Potter examined Thompson for complaints of knee pain and ordered that his left knee should be "aspirated in one-two weeks." Walls Aff. Attach., at 24, Docket No. 48-1. On March 8, 2015, Thompson filed an informal complaint, stating that he had filed multiple requests for this treatment for his knee, only to be told each time that he was "scheduled." *Id.* On March 16, Nurse Hall informed Thompson that that he was scheduled to come to medical that same week. She explained that his previous appointment had been cancelled "due to [him] being on special precautions (SP)." *Id.* Thompson filed a regular grievance on March 19, claiming that the delay in having his knee aspirated "caused [him] pain and discomfort as evidenced by his [sic] withdrawing (12) of the measurement of the aspiration needle." *Id.*, at 25.

Thompson filed his § 1983 complaint on January 3, 2017. *See Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 735-36 (4th Cir. 1991) (finding inmate's § 1983 action commenced for statute of limitations purposes when he delivers complaint to prison authorities for mailing to court). His pleading sets out five "counts": (1) retaliation for his past lawsuits and grievances against prison officials, in violation of the First and Fourteenth Amendments; (2) deliberate indifference to hazardous conditions or serious medical needs and excessive force, in violation of

---

[5]     Investigation of Thompson's grievance on this incident reflected that the prescription was for one 20 mg pill and Nurse Tolbert offered him two 10 mg pills of the medication. *See* Pl.'s Exhibits, at 35, Docket No. 130.

the Eighth Amendment; (3) denial of substantive and procedural due process and equal protection, in violation of the Fourteenth Amendment; (4) state law claims of assault; and (5) violations of Article 1, Sections 9, 11, and 12, of the Virginia Constitution. Thompson names all of the medical defendants in Counts (1), (2), (3), and (5), but does not name any of them in Count (4). Accordingly, Counts (1), (2), (3), and (5) will be addressed below.

These defendants have filed motions to dismiss (Docket Nos. 44, 62, and 66), and Thompson has filed multiple responses to them (Docket Nos. 100-3, 100-4, 123, 126, and 127). Thus, I conclude that these motions are ripe for decision.

## II.

### A.  Standard of Review

To survive the defendants' motions to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, the complaint must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In particular, to make out a § 1983 claim, Thompson must state sufficient facts to establish "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).[6]

I must hold Thompson's *pro se* complaint, "however inartfully pleaded" it may be, "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In so doing, I must take "all well-pled facts as true and construe[ ] these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint."

---

[6]     I have omitted internal quotation marks, alterations, or citations here and throughout this opinion, unless otherwise noted.

*Nemet Chevrolet, Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "[L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts," however, and I need not take them as true. *Id.*;

### B. Statute of Limitations

The defendants argue that some of the § 1983 claims and all of the state law claims against them were not timely filed under the applicable statutes of limitations. I conclude that it is not appropriate to grant their motion to dismiss on this ground as to any of Thompson's § 1983 claims concerning his medical care.

Federal law dictates that for uniformity's sake, all § 1983 actions arising from events in Virginia are governed by its two-year, residual statute of limitations for all personal injury cases, Vs. Code Ann. § 8.01-243(A). *See Owens v. Okure*, 488 U.S. 235, 250 (1989) (holding that in states with multiple statutes of limitations for personal injury claims, "courts considering § 1983 claims should borrow the general or residual statute [of limitations] for personal injury actions"); *Shelton v. Angelone*, 148 F. Supp.2d 670, 677 (W.D. Va. 2001) (applying *Owens* standard to hold that Va. Code Ann. § 8.01-243(A) applies to prisoner § 1983 claims). Section 8.01-243(A) allows a litigant two years from the time his claim accrues to file that claim in court. A § 1983 claim accrues "when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." *Nasim v. Warden, Md. House of Corr.*, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

The statute of limitations applies somewhat differently to a § 1983 claim concerning ongoing complaints about medical care for a particular medical issue.

> [A] prisoner may allege a continuing violation under Section 1983 by identifying a series of acts or omissions that demonstrate deliberate indifference to a serious, ongoing medical need. The statute of limitations does not begin to run on such a claim for a continuing violation of a prisoner's Eighth Amendment rights until the

date, if any, on which adequate treatment was provided. A plaintiff's claim of a continuing violation may extend back to the time at which the prison officials first learned of the serious medical need and unreasonably failed to act.

*DePaola v. Clarke*, 884 F.3d 481, 487 (4th Cir. 2018).

Some incidents at issue in Thompson's medical claims occurred more than two years before he filed this action on January 3, 2017, while other allegations are undated in the complaint. The majority of his claims against the medical defendants, however, concern the ongoing treatment of Thompson's blood pressure issues at River North. This treatment and Thompson's requests and grievances about that treatment continued from late December 2014 well into 2015. Therefore, under *DePaola*, *supra*, I will deny the medical defendants' motions for dismissal of any § 1983 claims against them as time-barred. The defendants concede that § 1983 claims about events that occurred after January 3, 2015 were timely filed.[7]

### C. Retaliation

A state official may not retaliate against an individual for the exercise of a constitutional right. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). To state a colorable retaliation claim under Section 1983, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738 (2018). When an inmate files a grievance under the prison's established grievance procedure, he is exercising his First Amendment right to petition. *Booker v. S.C. Dep't of Corr.*,

---

[7]    The defendants also argue that the state law claims are time-barred under a separate statute of limitations, Va. Code Ann. § 8.01-243.2 (setting one-year statute of limitations on civil actions under state law relating to the conditions of plaintiff's confinement). Because I will dismiss Thompson's state law claims against the medical defendants for other reasons, however, I need not discuss the timeliness of those claims.

855 F.3d 533, 541 (4th Cir. 2017). The "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249. Moreover, the "plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether such action would likely deter a person of ordinary firmness." *Id.* at 250. Finally, the plaintiff must plead sufficient facts to show that the allegedly retaliatory act "was taken in response to the exercise of a constitutionally protected right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see, e.g, Martin*, 858 F.3d at 250 (deciding that defendant official's placement of plaintiff in administrative segregation after questioning him about the grievance he had filed the previous day was sufficient to meet causation element of First Amendment retaliation claim).

Thompson alleges that the defendants named in Count (1) "had personal knowledge and/or should have reasonabl[y] known that Thompson was actually exercising his First and Fourteenth Amendment rights." Compl. ¶ 183, Docket No. 1. He lists some civil suits he had previously filed against VDOC officials, many informal complaints and grievances he had filed at River North, and his intention to file a civil action against River North employees. *Id.* at ¶¶ 40-102, 192, Docket No. 1. He declares that the nurses used his blood pressure condition as "a means to inflict arbitrary adverse retaliatory actions/inactions against Thompson in an attempt to 'chill' and punish Thompson for exercising his protected rights." *Id.* at ¶ 151. He vaguely alleges that the defendants retaliated against him by checking his blood pressure before his medication had time to act and by crushing and mixing his medications to keep him from ensuring he received proper drugs and doses or from refusing doses. *Id.* at ¶¶ 152-54. The crushing and mixing of the medications allegedly led to his forcible extraction from his cell on

January 15, 2015, after he cut his wrist with a razor and refused to exit the cell after being ordered to do so. *Id.* at ¶ 157.

Thompson claims that the defendants "would not have inflicted their arbitrary adverse retaliatory actions/inactions if Thompson had not been exercising his protected rights," as demonstrated by "the close temporal proximity" between his pursuit of lawsuits and the defendants' actions. *Id.* at ¶ 186-87, 192. Nurses Hall and Wells, as supervisors, allegedly ordered their subordinates to retaliate against Thompson or failed to intervene to protect him from retaliation. *Id.* at ¶¶ 195-201. He also accuses Nurses Hall and Wells of "maladminister[ing] VDOC operating policies" related to medical screening, classification, pharmacy services, and mental health management "as a means to inflict" retaliation on Thompson.[8] *Id.* at ¶ 202.

Thompson's § 1983 retaliation claims fail on the third prong of the constitutional standard. His allegations describe acts or omissions by the medical defendants that he considered adverse. He also describes his exercise of rights protected by the First Amendment— filing lawsuits and prison grievances. The causation element of his retaliation claim, however, is without any factual basis. It rests entirely on conclusory assertions about the defendants' motivations with no facts stated to connect their actions with his constitutionally protected

---

[8]     In his response in opposition to the nurses' motions to dismiss, Thompson contends that these defendants retaliated against him by "using his psychiatric condition as a means to inflict arbitrary adverse acts, such as causing Thompson to experience auditory/visual hallucinations and take Trilafon, anti-psychotic medication." Pl. Resp. Opp'n 14, Docket No. 100-4. He also contends that the nurses failed to order an "MRI" of his knee to retaliate against him. *Id.* Thompson's complaint and other submissions, however, provide no factual matter concerning the personal involvement of the medical defendants in decisions about his psychiatric care, and the nurses clearly had no authority to order an MRI of Thompson's knee. *See Iqbal*, 556 U.S. at 676 (holding "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution" to state § 1983 claim). Thus, he has not stated any claims against the medical defendants related to his psychiatric care.

conduct. He attempts, throughout the lengthy complaint, to build a retaliation claim using only "labels and conclusions" and "formulaic recitation[s] of the elements" of a retaliation claim, but without stating facts even suggesting that the defendants' allegedly adverse actions were "taken in response to the exercise of a constitutionally protected right." *Adams*, 40 F.3d at 75. Retaliation claims so constructed cannot survive a motion to dismiss. I will grant the medical defendants' motions to dismiss as to Count (1).

### D. Medical Care

"Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). The inmate must prove that, objectively, he was suffering from a serious medical need and that, subjectively, the defendant was deliberately indifferent to that need, meaning that he was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Objectively, the inmate's medical condition must be "serious." *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding Eighth Amendment provides no expectation that prisoners will be provided with "unqualified access to health care"). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Even assuming that Thompson's blood pressure and knee problems at River North presented a serious medical need, to prevail on his § 1983 claim, he must also show the defendants' "deliberate indifference" to that need. *See Farmer*, 511 U.S. at 839-40. "[A]n official acts with deliberate indifference if he had actual knowledge of the prisoner's serious

medical needs and the related risks, but nevertheless disregarded them." *DePaola*, 884 F.3d at 486. An inadvertent failure by a doctor or nurse to provide appropriate medical care, or an inmate's mere disagreement with the medical judgments of a doctor or a nurse does not constitute deliberate indifference. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Moreover, it is not the function of prison administrators or nurses to second guess the good faith treatment decisions of licensed physicians. *Shakka v. Smith*, 71 F.3d 162, 167 (4th Cir. 1995); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975).

The facts Thompson provides do not reflect that the medical defendants ignored his BP issues or his knee problem. The record reflects that he received medication and BP checks in the manner that these medical professionals determined was appropriate to monitor his BP and calculate and provide the most effective treatment for it. He had the capability to refuse medication if he so desired, and he repeatedly did so, complicating the defendants' treatment efforts. The doctor ordered that Thompson be scheduled for aspiration of his knee, and the nurses placed him on the doctor's schedule to receive that treatment. After the appointment for the procedure was initially cancelled because of Thompson's status on suicide precautions, the nurses rescheduled it. They could rightfully rely on the doctor's judgment about the timing of that rescheduled appointment. Thompson's complaints about his medical care are based on his belief that he, without any medical training, knew better than the doctor and nurses what medical care was appropriate for his symptoms (*e.g.,* when he should have medical care, what was causing those symptoms, *etc.*). Such disagreements between a patient and his medical care givers are not actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976) (holding that decisions as to whether or when to order particular medical procedures or alter course of

treatment are "classic example[s] of . . . medical judgment" not actionable under § 1983). I will grant the medical defendants' motions to dismiss as to Count (2) accordingly.

### E. Due Process and Equal Protection

Count (3) focuses primarily on disciplinary charges and being removed from protective custody to be placed and maintained in long-term segregated confinement. Thompson does not state facts showing that the medical defendants played any role in these decisions. *See Iqbal*, 556 U.S. at 676. His procedural due process allegations against Nurses Wells and Hall in Count (3) appear to be that the "maladministered" unspecified portions of VDOC policies concerning medical and mental health care and refused his requests for copies of his medical records. Compl. ¶¶ 130-31, 202. State officials' failure to abide by state procedural regulations is not a federal due process issue, and is, therefore, not actionable under § 1983. *Riccio v. Cty. Of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue.").

Thompson also attempts, in Count (3), to recast his medical and retaliation claims as substantive due process and equal protection claims. Any such claim fails. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims"). Nothing in his complaint suggests that any of the defendants treated him differently than other similarly situated inmates with any discriminatory purpose, or that they had "no rational basis for the difference in treatment." *Willis v. Town of Marshall, N.C.*,

426 F.3d 251, 263 (4th Cir. 2005) (regarding elements of equal protection claim).  I will grant the medical defendants' motions to dismiss as to Count (3).

### F.  State Law Claims

Thompson's state law claims in Count (5) consist merely of labels and conclusory assertions.  *See Beaudett v. City of Hampton*, 775 F.3d 1274, 1278 (4th Cir. 1985) (holding that requirement for "generous construction of *pro se* complaints" is not limitless, and judges "cannot be expected to construct full blown claims from sentence fragments" in a *pro se* complaint).  In any event, because I have concluded that Thompson's federal claims against the medical defendants must be dismissed, I decline to exercise supplemental jurisdiction over his state law claims and will dismiss Count (5) without prejudice.  *See* 28 U.S.C. § 1367(c).

### III.

For the reasons stated, I will grant the medical defendants' motions to dismiss as to Thompson's § 1983 claims and dismiss his state law claims without prejudice.  Further, I will dismiss the defendants' motions for summary judgment on exhaustion of administrative remedies as moot.

An appropriate order will enter this day.

ENTERED:  This  29th  day of March, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE