IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| PAUL C. THOMPSON, JR., | ) | |
|     Plaintiff, | ) | Civil Action No. 7:17cv00010 |
| | ) | |
| v. | ) | **AMENDED MEMORANDUM OPINION** |
| | ) | |
| | ) | By: Norman K. Moon |
| H.W. CLARKE, *et al.*, | ) | United States District Judge |
|     Defendants. | ) | |

Paul C. Thompson, Jr., an inmate proceeding *in forma pauperis* and *pro se*, filed this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging various infringements on his federal rights by numerous administrative and correctional staff associated with the Virginia Department of Corrections ("VDOC") and River North Correctional Center ("River North"). Presently pending are motions to dismiss (Docket Nos. 42 and 55) filed by the correctional defendants.[1] For the reasons stated, I conclude that these motions must be granted in part and denied in part.

### I.
### A.

Thompson alleges that the correctional defendants were involved in various aspects of his incarceration at River North from December 3, 2013, to March 26, 2015. Relevant to the correctional defendants' motions to dismiss, Thompson asserts the following claims: Count (1) is retaliation for his past lawsuits and grievances against prison officials, in violation of the First

---

[1] These defendants are H.W. Clarke, H. Ponton, B. Wright, B. Booker, Major Mullins, Lt. Montgomery, Lt. Miller, Lt. Evans, Lt. Whitt, C.L. Parr, B. Walls, Unit Manager Doss, Institutional Hearing Officer ("IHO") King, M. Rhudy, Lt. Harley Colna, Sgt. Thompson, Sgt. Jones, C/O J. Rosenbaum, C/O A.D. Hash, C/O Shaffner, C/O Felts, J.E. Parks, Keith Dawkins, and Gail Jones. Lt. Evans adopts the other correctional defendants' arguments (Docket No. 43) in support of his motion (Docket No. 55). Lt. Colna was named as "Sgt. Coleman" in the complaint, but the court previously ordered the name be corrected on the docket. (Docket No. 34.) For any claim arising under the Eighth Amendment and discussed in Count (2) of the complaint, the correctional defendants filed a motion for partial summary judgment (Docket No. 56) which will be addressed separately.

and Fourteenth Amendments[2]; Count (3) is the denial of substantive and procedural due process and equal protection, in violation of the Fourteenth Amendment[3]; Count (4) is state law assault[4]; and Count (5) is for violations of the Article I, Sections 9, 11, and 12 of the Virginia Constitution. Thompson seeks damages and a transfer to the Federal Bureau of Prisons as relief.

Many aspects of Thompson's claims rely on his litigation history, specifically this case and three cases filed with the United States District Court for the Eastern District of Virginia. *Thompson v. Dolan*, No. 2:12cv209 (the "First Case"), was docketed on April 18, 2012, the court sent waivers of service of process on July 9, 2012, the case was closed on September 23, 2015, but remains pending since December 18, 2017, due to a remand in part in by *Thompson v. Commonwealth*, 88 F.3d 89, 93 (4th Cir. 2017). *Thompson v. Clarke*, No. 2:14cv86 (the "Second Case"), was docketed on February 11, 2014, the court sent waivers of service of process on April 8, 2014, and the case was dismissed on March 9, 2017. *Thompson v. Clarke*, No. 2:15cv439 (the "Third Case"), was docketed on October 1, 2015, the court sent waivers of service of process on April 29, 2016, and the case remains pending. This case was docketed on January 9, 2017, and the court sent waivers of service of process on March 14, 2017.

---

[2] Thompson invokes the Fourteenth Amendment for this claim, but it is more appropriately treated as arising under the First Amendment. *See, e.g.*, *Bounds v. Smith*, 430 U.S. 817, 838 (1977); *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 546 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *cf. Foley v. Orange Cty.*, 638 F. App'x 941, 945 (11th Cir. 2016) ("The First Amendment applies to state and local governments by its incorporation through the Due Process Clause of the Fourteenth Amendment."). Thompson acknowledges that he is not making a free-standing access to courts claim. (Pl.'s Resp., Docket No. 100-2, 11.)

[3] Thompson also invokes the term "retaliation" in Count (3), but such claims are better addressed in Count (1).

[4] Count (4) also complains of medical malpractice, but the correctional defendants are not medical practitioners subject to that claim.

## B.[5]

River North "Building A "Unit Manager Doss placed Thompson in the protective custody pod in September 2014 after other inmates attempted to extort him. (Compl. ¶¶ 135, 139.) Thompson had a security score of 42 points on his reclassification document upon admission to the protective custody pod. (*Id.* ¶ 138.)

While in the protective custody pod, Thompson would help other inmates litigate claims against the Commonwealth of Virginia and the VDOC. (*Id.* ¶ 136.) Although Thompson's pod had its own computers, it did not have a user manual for "Westlaw Premise 4.4," which was available to inmates in general population. (*Id.* ¶ 137.)

Thompson was not given provision of cold weather clothing, like a coat, as means to deny him outside recreation while he was in segregation between November 17, 2014, and January 11, 2015. (*Id.* ¶ 147.) Doss, C/O Shaffner, Wright, and Parr responded to Thompson's administrative remedy requests for the clothes. (*Id.*) Thompson believes that Wright, Booker, Major Mullins, Lt. Miller, Lt. Evans, and Lt. Whitt ordered subordinates to not provide cold weather clothing as retaliation. (*Id.* ¶ 149.)

In November 2014, Thompson filed a grievance about Doss intentionally harassing and retaliating against him. (Compl. ¶ 138.) About a month later, Doss scored Thompson's security

---

[5] The parties agree that the following factual allegations form the basis of the action. (Br. Supp. Mot. Dismiss 2-9; Pl.'s Resp., Docket No. 100-2, 2.) This agreement is noteworthy because Thompson's complaint lacks a chronological description of events, a critical part of a proper complaint. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (holding that plaintiff's obligation to provide the "grounds" of his "entitlement to relief" under Fed. R. Civ. P. 8(a) "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action" and as such, "[f]actual allegations must be enough to raise a right to relief above the speculative level") (citations omitted). Instead, Thompson's complaint scatters partial descriptions of occurrences, often without dates or defendants' names, in multiple places throughout the 100-page pleading. In his responses to other defendants' motions, Thompson contends that all necessary details about the events at issue were provided to the defendants in his many grievance documents, essentially incorporating these documents by reference into his complaint. Thus, for the sake of clarity, this factual summary is based on Thompson's submissions as a whole, including copies of his informal complaints and grievances now in the record. (Docket No. 130.) In citations to the record, I will use the page numbers from the court's digital version of the document.

classification tally with 42 points again but yet recommended that Thompson be removed from protective custody and his security score be increased to Level 5. (*Id.* ¶¶ 140-141.) Thompson believes Doss made the changes, and Booker and Jones approved, as retaliation. (*Id.* ¶ 141.)

On November 17, 2014, Transportation Officer Rosenbaum drove Thompson to a medical appointment at a hospital while Transportation Officer Hash rode in the passenger seat. (*Id.* ¶ 111.) Thompson argued with Rosenbaum about him driving up to 85 miles per hour in inclement weather. (*Id.* ¶ 120.) After the argument, Rosenbaum drove the van even faster, causing Thompson to be rendered unconscious after being thrown from the front cab to the rear door of the van. (*Id.* ¶¶ 124-125.) Thompson believes that Warden Wright, Assistant Warden Booker, Montgomery, Rosenbaum, and Hash conspired to cover up transport incident by destroying the video of the transport and denying Thompson exhaustion of remedies on the issue. (*Id.* ¶ 160.) Once the van returned to River North, Lt. Montgomery refused to provide a wheelchair and made Thompson walk, with an injured knee, 200 yards with staff's assistance to the medical department. (Compl. ¶¶ 127-128.)

Montgomery charged Thompson with a disciplinary infraction for allegedly threatening Rosenbaum and his family on November 17, 2014. (*Id.* ¶ 134.) On November 20, 2014, King served as IHO and found Thompson guilty of the charge. (*Id.* ¶ 174.)

On December 3, 2014, staff charged Thompson with a disciplinary infraction for allegedly possessing razors, which are contraband. (*Id.* ¶ 176.) Thompson blames segregation staff for not collecting the razors after being used. (*Id.*)

On January 15, 2015, Thompson cut his left wrist with a razor the correctional officers in segregation purportedly failed to collect from him after his shower. (*Id.* ¶ 157.) That same day, Thompson was placed on suicide watch, and Booker, Lt. Evans, Lt. Whitt, Sgt. Jones, Sgt.

Thompson, and Doss withheld Thompson's legal materials until after Thompson was transferred out of River North. (*Id.* ¶ 165.) Upon coming off of suicide watch, C/O Shaffner and Sgt. Thompson did not return the legal materials removed from the cell on January 15, 2015. (Compl. ¶ 166.) Nonetheless, Thompson said he was "incapacitated" throughout January and February 2015, even if he had access to legal materials. (*Id.* ¶ 162.) Wright denied Thompson access to medical records to review and make copies, and Booker refused to inform the United States District Court for the Eastern District of Virginia of Thompson's suicide status. (*Id.* ¶¶ 159, 162.) Also, Rhudy denied Thompson access to the institutional attorney between September 2014 and February 2015. (*Id.* ¶ 169.) Thompson believes the withholding of these materials, information, and access constitutes retaliation.

Thompson received a "212" disciplinary charge on February 6, 2015. (*Id.* ¶ 168.) Thereafter, King failed to give Thompson credit for time spent in pre-hearing segregation for a "212 disciplinary charge" as a retaliatory act to delay Thompson's ability to access personal property and legal materials. (*Id.*) During that time, the First Case and Second Case were still pending.

On March 3, 2015, Sgt. Thompson found more razors in Thompson's cell, and Lt. Whitt charged Thompson again. (*Id.* ¶ 177.) King found Thompson guilty. Thompson again blames segregation staff for not collecting the razors which were only to be used in the shower. (Compl. ¶ 177.)

On March 18, 2015, King found Thompson guilty of delaying or hindering an employee in the performance of duties because Thompson had refused a haircut. (*Id.* ¶ 175.) Major Mullins approved the conviction although Major Mullins did not know Thompson was no longer on protective custody status. (*Id.*)

Thompson and others in the protective custody unit were transferred to Red Onion State Prison on March 26, 2015. (*Id.* ¶ 145.) On May 20, 2015, Thompson received his missing legal materials that purportedly had been found and mailed from River North.

## II.

The correctional defendants argue that the complaint fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).[6] When evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court must accept as true all well-pleaded allegations. *See Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 539 (4th Cir. 2013); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). Stated differently, in order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). "Factual allegations must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005). Rule 12(b)(6) does "not require heightened fact

---

[6] They also argue that Thompson should be required to pay the filing fee in full per 28 U.S.C. § 1915(g). However, this argument is not a valid basis for dismissal under Rule 12(b)(6).

pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Making the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thompson is proceeding *pro se* and, thus, entitled to a liberal construction of the pleading. *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "[p]rinciples requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Fourth Circuit has explained that "[t]hough [*pro se*] litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276; *see Kalderon v. Finkelstein*, Case No. 08 Civ 9440, 2010 U.S. Dist. LEXIS 88036, at *3 n.1, 2010 WL 3359473, at *1 n.1 (S.D.N.Y. Aug. 24, 2010) ("Plaintiff's complaint belongs to the everything-but-the-kitchen sink school of thought . . . . [T]he [c]omplaint is extremely difficult to follow because of its extreme length and purported factual detail. The factual allegations are often repetitive, inconsistent, and contradicted. . . ." (internal quotation marks omitted)).

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Notably, a plaintiff must sufficiently allege a defendant's personal act or omission leading to a deprivation of a federal right. *See Fisher v. Washington Metro. Area Transit Author.*, 690 F.2d 1133, 1142-43 (4th Cir. 1982), *abrogated on other grounds by Cty. of Riverside v. McLaughlin,*

500 U.S. 44 (1991). Negligent deprivations are not actionable under § 1983. *See, e.g.*, *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995).

**III.**

The group of claims in Count (1) allege retaliation for Thompson filing civil actions and grievances. Thompson alleges that the defendants to Count (1)[7] "had personal knowledge and/or should have reasonabl[y] known that Thompson was actually exercising his First and Fourteenth Amendment rights." (Compl. ¶ 183.) As his "exercise," he lists this action and the First, Second, and Third Cases filed in the Eastern District of Virginia; many informal complaints and grievances he had filed at River North; and his intention to file a civil action against River North employees. *Id.* at ¶¶ 40-102, 192.

A state official may not retaliate against an individual for the exercise of a constitutional right. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993). To state a colorable retaliation claim under Section 1983, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017). When an inmate files a grievance under the prison's established grievance procedure, he is exercising his First Amendment right to petition. *Booker*, 855 F.3d at 541. The "plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Martin*, 858 F.3d at 249. Moreover, the "plaintiff's actual response to the retaliatory conduct is not dispositive of the question of whether

---

[7] They are H.W. Clarke, H. Ponton, B. Wright, B. Booker, J.E. Parks, Major Mullins, Keith Dawkins, Gail Jones, Unit Manager Doss, Lt. Montgomery, Lt. Evans, Miller, Lt. Whitt, Sgt. Jones, Lt. Colna, Sgt. Thompson, C/O Shaffner, C/O Rosenbaum, C/O Hash, C/O Felts, M. Rhudy, and IHO King. (Compl. ¶ 110.)

such action would likely deter a person of ordinary firmness." *Id.* at 250. Finally, the plaintiff must plead sufficient facts to show that the allegedly retaliatory act "was taken in response to the exercise of a constitutionally protected right." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *see, e.g.*, *Martin*, 858 F.3d at 250 (deciding that defendant official's placement of plaintiff in administrative segregation after questioning him about the grievance he had filed the previous day was sufficient to meet causation element of First Amendment retaliation claim).

Thompson properly alleges several plausible claims of retaliation in violation of the First Amendment. It is plausible that, *arguendo*, Booker, Lt. Evans, Lt. Whitt, Sgt. Jones, Sgt. Thompson, Doss, and C/O Shaffner's unnecessary prolonged seizure of his legal materials after he was removed from suicide watch[8] adversely affected his ability to litigate the First and Second Cases until the materials were mailed to him at Red Onion State Prison in May 2015. It is plausible that, *arguendo*, Doss, Shaffner, Wright, Booker, Major Mullins, Lt. Miller, Lt. Evans, and Lt. Whitt prevented Thompson from obtaining cold weather clothing for two winter months in retaliation because they knew Thompson helped other inmates litigate claims against the Commonwealth of Virginia and the VDOC. Similarly, it is plausible that, *arguendo*, Doss and Booker retaliated after Thompson's grievances by arbitrarily increasing Thompson's security level, removing him from protective custody, and facilitating Thompson's transfer to Red Onion State Prison. It is plausible that King did not award time credit spent in pre-hearing segregation for the "212 charge" to, *arguendo*, unduly increase the time Thompson was kept separate from his legal materials while his litigation continued.[9]

---

[8] It is reasonable that inmates on suicide watch or in a strip cell do not have access to personal property to enhance the inmate's safety and facility's security.

[9] King cites *Ward v. Johnson*, 690 F.2d 1098, 1109-13 (4th Cir. 1982), to argue that he is entitled to absolute immunity for decisions made in institutional disciplinary hearings. When seeking absolute immunity, a government

Thompson also suggests that these defendants engaged in a conspiracy. Establishing a civil conspiracy under 42 U.S.C. § 1983 requires a plaintiff to show that at least two defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). "To avoid evisceration of the purposes of qualified immunity, courts have [ ] required that plaintiffs alleging unlawful intent in conspiracy claims under . . . § 1983 plead specific facts in a nonconclusory fashion to survive a motion to dismiss." *Simmons v. Poe,* 47 F.3d 1370, 1377 (4th Cir. 1995) (quoting *Gooden v. Howard County, Md.,* 954 F.2d 960, 969–70 (4th Cir. 1992)). In light of the breadth of properly alleged claims of retaliation surviving the motion to dismiss, Thompson's allegation of conspiracy surpasses the "nonconclusory" threshold to survive a motion to dismiss and appears plausible on this record. Namely, based off the facts alleged, Thompson could prove facts that at least two of the correctional defendants came to a mutual understanding to deprive him of a federal right as to the retaliation claims surviving the motions to dismiss.

However, the rest of Thompson's § 1983 retaliation allegations fail to state a plausible claim for relief. For example, the allegations involving the transport van do not address how the retaliation is causally related to any protected activity versus his admitted argument with Rosenbaum. The same problem arises for the retaliation claim about walking with an injured knee versus using a wheelchair; being charged and found guilty for threats, possessing contraband, and getting a haircut; not making copies of medical records; not contacting courts on Thompson's behalf; or frustrating access to an institutional attorney when it is undisputed law

---

official bears a heavy burden of demonstrating that overriding public policy considerations warrant such exceptional protection. King has not done so, and furthermore, he does not address *Cleavinger v. Saxner*, 474 U.S. 193, 206-07 (1985), which held that prison officials involved in disciplinary decisions are entitled to qualified, not absolute, immunity, for quasi-judicial functions.

library access was provided. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 356 (1996) (noting the government does not need to require a particular method to ensure reasonable access to courts).

The correctional defendants also contend that they are entitled to the affirmative defense of qualified immunity. The court concludes, however, that they are not. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When a defendant asserts the affirmative defense of qualified immunity, the court must determine "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right[,]" and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Id.* at 232 (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In determining whether the law was clearly established, the court "'ordinarily need not look beyond the decisions of the Supreme Court, [the Fourth Circuit Court of Appeals], and the highest court of the state in which the case arose.'" *Lefemine v. Wideman*, 672 F.3d 292, 298 (4th Cir. 2012) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 251 (1999)), *vacated on other grounds*, 133 S. Ct. 9 (2012).

The onus is on a defendant asserting qualified immunity to actually put forth authorities and argument showing that he is entitled to it. "The burden of proof and persuasion with respect to a defense of qualified immunity rests on the official asserting that defense." *Meyers v. Baltimore Cty., Md.*, 713 F.3d 723, 731 (4th Cir. 2013).

In support of their defense of qualified immunity, defendants summarily assert that Thompson's allegations do not demonstrate a violation of clearly established law. The court has already determined that Thompson's allegations state plausible claims of violations of a

constitutional right to be free from retaliation. Further, this right had been clearly established. *See, e.g.*, *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978) ("A threat of physical harm to a prisoner if he persists in his pursuit of judicial relief is as impermissible as a more direct means of restricting the right of access to the courts. Nor is it necessary that the prisoner succumb entirely or even partially to the threat. It is enough that the threat was intended to impose a limitation upon the prisoner's right of access to the court and was reasonably calculated to have that effect."). Accordingly, I reject defendants' qualified immunity argument as to the retaliation claims going forward, and I will grant in part and deny in part as to Count (1).

## IV.

Count (3) generally claims violations of substantive and procedural due process and of equal protection guaranteed by the Fourteenth Amendment.[10] It is well established that "states may under certain circumstances created liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483 (1995). Nevertheless, while the Fourteenth Amendment "prohibits a state from depriving a defendant of liberty without due process of law, when the defendant is lawfully convicted and confined to prison, he loses a significant interest in his liberty for the period of his sentence." *Gaston v. Taylor*, 946 F.2d 340, 343 (4th Cir. 1991). Rather, an inmate's liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or which affects the duration of the sentence. *Sandin*, 515 U.S. at 484, 487. Therefore, "[i]f a plaintiff has a liberty interest within the meaning of *Sandin*, he is entitled to certain procedural protections before that interest can be taken away." *Moody v. Williams*, No.

---

[10] Thompson acknowledges that he is not pursuing a due process claim about accessing administrative remedies. (Pl.'s Resp., Docket No. 100-2, 23.) Nonetheless, a claim that prison officials have not followed their own independent policies or procedures also does not state a constitutional claim. *See, e.g.*, *United States v. Caceres*, 440 U.S. 741, 752-55 (1979); *Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990).

1:12cv583, 2015 U.S. Dist. LEXIS 54575, at *9, 2015 WL 1916388, at *4 (E.D. Va. Apr. 25, 2015). "[U]nless an inmate has an actual protected liberty interest in a particular condition, any failure of the prison to provide him with procedural protections does not implicate the Due Process Clause," even if officials fail to follow their own procedures. *Id.* (citing *Riccio*, 907 F.2d at 1469).

Thompson fails to demonstrate that due process protections were to be afforded for any of the disciplinary charges. *Cf. Wolff v. McDonnell*, 418 U.S. 539, 564-71(1974). In any event, Thompson acknowledges that "some evidence" supported the convictions for the razors found in his cell. *See Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985) (holding substantive due process is satisfied if the disciplinary hearing decision was based upon "some evidence").

Even after viewing the relevant facts in the light most favorable to him, Thompson fails to state plausible due process claims about the conditions of confinement in segregation, under suicide watch, or in protective custody.[11] Thompson relies on the following experiences as "atypical and significant hardships": being in segregation for four months while waiting to be transferred to Red Onion State Prison; receiving an anti-psychotic medication; being labeled "disabled" because of a mental health condition; "stacking" disciplinary charges; attempting suicide and the resulting cell extraction on January 15, 2015; being placed on suicide watch three times between January and March 2015; being subjected to unspecified "psychological torture" resulting from emotional stress between November 9, 2014 and March 26, 2015; wearing physical restraints; and injuring himself after he fell out of his bunk. "[A]lthough the conditions were more burdensome than those imposed on the general prison population, they were not so

---

[11] Nonetheless, Thompson alleges that the privileges allowed in protective custody were not that different than those allowed for the general population.

atypical that exposure to them imposed a significant hardship in relation to the ordinary incidents of prison life." *Beverati v. Smith*, 120 F. 3d 500, 504 (4th Cir. 1997). Moreover, there is no liberty interest in avoiding placement in segregation. *See Bynum v. Saunders*, 3:10cv28-HEH, 2010 U.S. Dist. LEXIS 126128, at *5-6, 2010 WL 4975428, at *2 (E.D. Va. Nov. 30, 2010) (citing cases).

For the equal protection claim, Thompson relies on his allegations of retaliation. Consequently, Thompson alleges that defendants had a written or unwritten policy or custom to retaliate against him, as a class of one, because either he was approximately 60 years old when the underlying events occurred or because he litigates civil actions against the Commonwealth and VDOC employees.

"The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." *Morrison v. Garraghty*, 239 F.3d 648, 653-54 (4th Cir. 2001). To prevail on an equal protection claim, "a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Lee v. Johnson*, 793 F. Supp. 2d 798, 802-03 (W.D. Va. 2011) (citing *Garraghty*, 239 F.3d at 654).

Here, Thompson does not allege sufficient facts comparing himself to similarly situated inmates such that he can state a plausible equal protection claim. Instead, he merely declares that he is part of a protected class at age sixty or is a "class of one." *See, e.g., Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (discussing a "class of one"). Those declarations are insufficient without a plausible allegation of intentional discrimination, identifying similarly situated inmates, and non-reasonable basis for the treatment. *See Overton v. Bazzetta*, 539 U.S.

-14-

126, 132 (2003) (discussing inmate's burden to disprove the validity of a prison practice); *Turner v. Safley*, 482 U.S. 78, 89-92 (1987) (framing the reasonableness of a prison practice); *Sylvia Dev. Corp. v. Calvert Cty.*, 48 F.3d 810, 819 (4th Cir. 1995) (stating that a plaintiff must show more than the fact that "a benefit was denied to one person while conferred on another" to prove that he was intentionally or purposefully discriminated against). Accordingly, the correctional defendants motions to dismiss will be granted as to Count (3).[12]

## V.

Count (4) asserts a state-law violation of assault, and Count (5) asserts violations of the Virginia Constitution. The correctional defendants argue that the state's statute of limitations bars these claims. Thompson argues in response that the two year limitations period to file § 1983 claims should apply to the state law claims. I find the correctional defendants' argument more persuasive and will grant their motion to dismiss the state law claims.

Generally, a statute of limitations argument would be an affirmative defense, not properly raised in a motion to dismiss pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 8(c); *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). However, "if all facts necessary to the affirmative defense 'clearly appear on the face of the complaint'" then a court may address the affirmative defense pursuant to Rule 12(b)(6). *Goodman*, 494 F.3d at 464; *see Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (noting a court may raise a statute of limitations defense *sua sponte* when the plaintiff is proceeding as a pauper); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 181 (4th Cir. 1996) (stating *sua sponte* dismissal is proper when the face of the complaint clearly reveals the existence of a meritorious affirmative defense).

---

[12] If Thompson was seeking to proceed under 42 U.S.C. § 1985 for civil conspiracy, he fails to state a plausible claim about a specific class-based, invidiously discriminatory animus as required by § 1985.

-15-

The relevant facts regarding Thompson's exhaustion and the time periods during which Thompson's causes of action could have arisen appear on the face of the complaint and without the need for additional evidence. The allegations in the complaint arise from the time Thompson was incarcerated at River North, which he alleges was between December 2, 2013, and March 26, 2015. (Compl. ¶ 1.) Accordingly, the latest possible actions that the correctional defendants could have taken against Thompson at River North for the claims in the complaint would have been on March 26, 2015. Even if, *arguendo*, all of the allegations in the complaint took place on March 26, 2015, Thompson's state law claims would be barred by Virginia's statute of limitations for claims brought by inmates.

Virginia Code § 8.01-243.2 provides that personal actions relating to the conditions of confinement by a person confined in a state or local correctional facility "shall be brought by or on behalf of such person within one year after cause of action accrues or within six months after all administrative remedies are exhausted, whichever occurs later." Va. Code § 8.01-243.2; *see Chapman v. Bullock*, No. 3:14cv463, 2016 U.S. Dist. LEXIS 15994, at *15, 2016 WL 543165, at *5 (E.D. Va. Feb. 9, 2016) ("Under the relevant Virginia law, the limitation period is not tolled simply because an inmate is exhausting his administrative remedies . . . .").

Even if Thompson exhausted available administrative remedies for every claim arising under state law, the latest relevant grievance activity he alleges in his complaint occurred on March 25, 2015. (Compl. ¶ 73.) Thus, Thompson had either (a) six months from March 25, 2015 – the date of his latest alleged grievance activity – or (b) one year from March 26, 2015 – the last day he was confined at River North – to file any state law claims relating to his confinement. Those periods expired on September 25, 2015 and March 26, 2016, respectively. Thompson filed his complaint in this case on or about January 3, 2017.

Thompson is correct that Virginia's applicable statute of limitations for § 1983 claims, Virginia Code § 8.01-243(A), is two years. That statutory time applies to federal claims because § 1983 adopts the statute of limitations that the forum state uses for general personal injury cases. *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). However, the interpretation of federal law does not override the Virginia General Assembly's time limits for state causes of actions, even if pursued in federal court under supplemental jurisdiction. Furthermore, Thompson's invocation of tolling rules does not save the state law claims. Thompson's litigation history in his federal cases shows he was not so "disabled" to litigate or pursue administrative remedies, despite an alleged finding of "disability" in 2004 by an administrative law judge. Even if a court tolled the time Thompson was without his legal materials after being released from suicide watch and transferred to Red Onion State Prison, it still would not explain the delayed commencement of these state law claims until January 2017.

I conclude that Virginia Code § 8.01-243.2 is the appropriate statute of limitations, Thompson filed his state law claims beyond the limitations period, and he has not demonstrated an entitlement to statutory or equitable tolling. Accordingly, the correctional defendants' motions to dismiss will be granted for Count (4) and Count (5).

## VI.

For the reasons stated, I will grant in part and deny in part the correctional defendants' motions to dismiss.

**ENTER**: This 25th day of April, 2018.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE