CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

03/30/2019
JULIA C. DUDLEY, CLERK
BY:    s/ F. COLEMAN
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| **PAUL C. THOMPSON,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:17cv00010** |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| **H. W. CLARKE,** *et al.*, | ) | **By: Norman K. Moon** |
| **Defendants.** | ) | **United States District Judge** |

Paul C. Thompson, a Virginia inmate proceeding *pro se*, filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging retaliation and Eighth Amendment claims against various officials employed by the Virginia Department of Corrections. Defendants filed a joint motion for summary judgment. Thompson responded, making this matter ripe for disposition. Several Defendants also filed a motion for entry of partial final judgment under Federal Rule of Civil Procedure 54(b). Upon review of the record, I will grant in part and deny in part Defendants' motion for summary judgment, and I will grant the Rule 54(b) Motion.

## I.    Factual Background

In my previous opinions, I dismissed several defendants and summarized Plaintiff's remaining claims. Thus, I offer only a brief overview here.

(1) Defendants Booker, Evans, Whitt, Jones, Thompson, Doss, and Shaffner unnecessarily prolonged seizure of his legal materials after he was removed from suicide watch, which adversely affected his ability to litigate his cases;

(2) Defendants Doss, Shaffner, Wright, Booker, Mullins, Miller, Evans, and Whitt, prevented Plaintiff from obtaining cold weather clothing for two winter months in retaliation because they knew Plaintiff helped other inmates litigate claims against the Commonwealth of Virginia and the VDOC;

1

(3) Doss and Booker retaliated against Plaintiff's grievances by arbitrarily increasing Plaintiff's security level, removing him from protective custody, and facilitating Plaintiff's transfer to ROSP;

(4) Defendant King did not award sentence credit for time he spent in pre-hearing segregation for the "212 charge," which unduly increased the time Plaintiff was kept separate from his legal materials while his litigation continued;

(5) At least two Defendants conspired to retaliate against Plaintiff; and

(6) Doss was deliberately indifferent to an excessive risk of harm regarding the razor retention policy in the shower area.

*See* Am. Mem. Op. 28, ECF No. 148; Am. Mem. Op. 8-12, ECF No. 149. I will reference the claims as numbered above.

## II. Legal Standards

Defendants move for summary judgment as to Claims 1 through 5. Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The dispute over a material fact must be genuine, "such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). As such, the moving party is entitled to summary judgment if the evidence supporting a genuine issue of material fact "is merely colorable or is not significantly probative." *Anderson*, 477 U.S. at 250.

The moving party bears the burden of proving that judgment on the pleadings is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If the moving party meets this burden, then the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In considering a motion for summary judgment, the court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 322-324; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, the nonmoving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). The evidence set forth must meet the "substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993).

Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his rights under the Constitution or laws of the United States. *See Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). To state a claim under this statute, Plaintiff must establish that he has been deprived of rights through the actions of a person or persons acting under color of state law. Therefore, he must affirmatively state conduct or omissions by each of the named defendants, personally, that violated his federally protected rights. *See, e.g.,* *Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985).[1]

---

[1] Plaintiff is proceeding *pro se* and, thus, is entitled to a liberal construction of the pleading. *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 90-95 (2007). However, "principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v.*

### III.    Discussion

#### A.  Claim 6

At the threshold, Defendant Doss does not appear to have briefed Claim 6.  *See* Am. Mem. Op. at 28, ECF No. 148.  Defendant Doss is directed to file any motion for summary judgment on this claim within sixty days.

#### B.  Claim 3

"Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable [under § 1983] because retaliatory actions may tend to chill individuals' exercise of constitutional rights." *Am. Civil Liberties Union v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993).  Specifically, prison officials may not retaliate against an inmate for exercising his constitutional right to access the court, *Hudspeth v. Figgins*, 584 F.2d 1345, 1347 (4th Cir. 1978), nor may they take actions that violate his First Amendment "right to file a prison grievance free from retaliation." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017).

On the other hand, I must treat an inmate's claim of retaliation by prison officials "with skepticism because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

> [T]o state a colorable retaliation claim under Section 1983, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct.

---

*City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  The Fourth Circuit has explained that "though *pro se* litigants cannot, of course, be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them." *Id.* at 1276.

*Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017), *cert. denied*, 138 S. Ct. 738, (2018). "For purposes of a First Amendment retaliation claim under Section 1983, a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Id.* Inmates also "must come forward with specific evidence establishing that *but for* the retaliatory motive, the complained incident . . . would not have occurred." *Oliver v. Myers*, No. 7:08cv558, 2008 WL 5212409, at *2 (W.D. Va. Dec. 12, 2008) (emphasis added).

Defendants assert that the reason for Plaintiff's security level increase and transfer to a more secure facility was neither arbitrary nor retaliatory. Instead, his security level was increased and he was recommended for transfer because he recently had been convicted of three disciplinary infractions for spitting/throwing/transferring bodily waste or fluids, threatening bodily harm, and possession of contraband. Doss Aff. ¶ 7, ECF No. 156-1. Defendant Doss specifically asserts that he did not retaliate against Plaintiff—his recommendation was based on "on a number of factors including Plaintiff's recent disciplinary infractions and his inability to properly adjust at RNCC." *Id.* at ¶ 9; *see also id.* at ¶¶ 11; 14; 15.

Conversely, Plaintiff alleges that he had personal conversations with both Defendant Booker and Defendant Doss about their subordinates' retaliation and Plaintiff's ongoing litigation against other VDOC facilities and his upcoming litigation against RNCC staff. He avers that they threatened adverse retaliatory actions if Plaintiff did not cease litigating, they increased his security level, and eventually transferred him. Therefore, Plaintiff establishes the first and second prongs of retaliation—that he engaged in protected conduct and that he suffered adverse action.

However, Plaintiff fails to establish causation.[2]  He pled guilty to the razor blade (contraband offense code 224) charge, and he was adjudicated guilty for the other charges brought by Defendants.  In light of these disciplinary convictions, which the federal court generally does not review for factual accuracy, *Woodard v. Mills*, 511 F.2d 1399 (4th Cir. 1975) (per curiam), Defendant Doss properly reevaluated Plaintiff's security level and recommended a change to security level 5 and a transfer to a security level 5 facility because RNCC is only a security level 4 facility.  Defendant Doss also noted that Plaintiff would be released from disciplinary segregation on December 6, 2014, and recommended that Plaintiff be placed in administrative segregation until he could complete his remaining disciplinary segregation for a separate disciplinary infraction and pending his transfer.  Doss Aff. ¶ 24.  Defendant Booker approved the recommendation that Plaintiff be assigned to administrative segregation, and Gale Jones at the Central Classification Services ("CCS") approved a transfer for Plaintiff to ROSP, a security level 5 facility.  *Id.* at ¶ 25.  The CCS has the final authority for offender transfers.  *Id.*

Therefore, Defendants have presented objective evidence of the reasons underlying their decision to increase Plaintiff's security level and suggest a facility transfer, and Plaintiff's allegations essentially request that the federal court overturn his disciplinary convictions, one of which was a guilty plea, in order to find that Defendants retaliated against him.  I will not do so. *See Cochran*, 73 F.3d at 1317 (Courts should view retaliation claims with skepticism because every action taken by a prison official is retaliatory in some sense.); *Carter v. Woods*, 535 F.2d 1249, 1249 (4th Cir. 1976) ("The federal courts do not sit as a reviewing body over the accuracy of disciplinary committees' findings of facts.").  I conclude that Plaintiff has failed to establish a genuine dispute that, but for his litigation efforts, the security level reclassification and transfer

---

[2] Plaintiff has also not shown that the disciplinary proceedings violated his constitutional rights.

6

would not have occurred. Furthermore, Defendants did not have ultimate authority over Plaintiff's transfer to ROSP—CCS did. Accordingly, I will grant summary judgment to Defendants as to Claim 3.

### C. Exhaustion

The Prison Litigation Reform Act provides in 42 U.S.C. § 1997e(a) that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). A prisoner must exhaust all available administrative remedies, whether or not they meet federal standards or are plain, speedy, or effective, *Porter v. Nussle*, 534 U.S. 516, 524 (2002), even if exhaustion would be futile because those remedies would not provide the relief the inmate seeks, *Davis v. Stanford*, 382 F. Supp. 2d 814, 818 (E.D. Va. 2005).

To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the facility provides to prisoners and meet all deadlines within that procedure before filing his action. *See Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006) (finding inmate's untimely grievance was not "proper exhaustion" of available administrative remedies under § 1997e(a)). Failure to exhaust is an affirmative defense that defendant has the burden of pleading and proving. *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 681 (4th Cir. 2005). However, an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available if a prisoner adduces facts that he, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008).

Defendants have presented evidence that Plaintiff failed to exhaust Claims 1, 2, 4, and 5. Meanwhile, Plaintiff asserts that he "made a good-faith effort to . . . exhaust [his] administrative remedies," but that his "grievances were never processed according to VDOC OP 866.1." Pl.'s Aff. ¶¶ 9-10, ECF No. 170. He specifically alleges that he filed grievances on Claims 1, 2, 4, and 5. *See id.* at ¶ 10 (filed grievance concerning Claim 1 but it was never logged); *id.* at ¶ 11 (same for Claim 4); *id.* at ¶ 12 (same for Claim 5); *id.* at ¶ 13 (same for Claim 2).

As to Claim 2, Defendants present evidence that Plaintiff did file a regular grievance on the issue—he alleged that Defendant prevented him from obtaining cold weather clothing because he helped other offenders litigate their cases. However, when Thompson's Level I grievance was determined to be unfounded, he did not timely appeal to Level II. *See* Walls Aff. ¶¶ 14-17, ECF No. 156-2. Specifically, Plaintiff filed a regular grievance on January 11, 2015, complaining that he was not attending outside recreation because no coats were available. Defendant Walls did not accept the grievance during intake and noted that his complaint did not affect him personally or cause him personal loss or harm—Defendant Walls did not assign a log number to the grievance and returned it to Plaintiff. Plaintiff appealed the intake decision to the Regional Ombudsman, who determined that the grievance met the criteria for intake.

Defendant Walls logged the grievance and provided a response on January 23, 2015. Under VDOC Operating Procedure, "if an offender is dissatisfied with the Level I response, he may appeal within 5 calendar days to the Regional Administrator. This information as well as the address for the Regional Administrator is provided on the Level I response." *Id.* at ¶ 16. Here, Plaintiff belatedly appealed on February 13, 2015. On February 20, 2015, the Regional Administrator responded to Plaintiff and advised him that his appeal exceeded the five-day time limit and that no further response would be provided. *Id.* at ¶ 17. Therefore, Plaintiff failed to

properly exhaust Claim 2, and I will grant the motion for summary judgment as to that claim. *See Woodford*, 548 U.S. at 90-94.

As to Claims 1, 4, and 5, Plaintiff's submissions state that he filed grievances and they were not logged and/or he did not receive responses. If Plaintiff could prove this allegation, he might also prove that he was prevented, through no fault of his own, from properly exhausting his claims. Defendants rely on their evidence that the Grievance Department had no record of receiving the relevant grievances from Plaintiff, thus creating a material dispute as to the issue of availability of the grievance procedures. Accordingly, I will deny Defendants' motion as to Plaintiff's Claims 1, 4, and 5 under § 1997e(a) and refer the matter to the magistrate judge to hold a hearing for further proceedings on exhaustion. Specifically, I find the following material disputes: (1) whether Plaintiff filed grievances on Claims 1, 4, and 5; and (2) what recourse he had if he never received a response of any kind.[3]

### D. Rule 54(b) Motion

Former Defendants Tolbert, Hall, Wells, Shaffer, and Potter filed a Motion for Judgment under Rule 54(b) requesting partial final judgment. Federal Rule of Civil Procedure 54(b) states:

---

[3] As stated, the defendants bear the burden of proving the affirmative defense that Plaintiff failed to exhaust available administrative remedies regarding his claims. *Jones*, 549 U.S. at 212. Once they have done so, the burden of proof shifts to Plaintiff to show, *by a preponderance of the evidence*, that the administrative remedies were unavailable to him through no fault of his own. *Graham v. Gentry*, 413 F. App'x 660, 663 (4th Cir. 2011) (citing *Moore*, 517 F.3d at 725). "The circuit courts of appeals have uniformly found that a judge can resolve factual disputes concerning exhaustion of administrative remedies under the PLRA." *Hill v. Haynes*, No. 3:06CV136, 2014 WL 4197588, at *3 (N.D. W. Va. Aug. 22, 2014), *aff'd*, 591 F. App'x 223 (4th Cir. 2015). Such questions of law arising in prisoner civil rights actions may be referred to a magistrate judge for factual development and preparation of a report making proposed findings of fact, conclusions of law, and recommended disposition of the issue. *See* 28 U.S.C. § 636(b)(1)(B-C).

When an action presents more than one claim for relief—whether as a claim, counterclaim, crossclaim, or third-party claim—or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Given that these defendants have been terminated from this action, (dkt. 143), I find no just reason for delay. Therefore, Defendants Tolbert, Hall, Wells, Shaffer, and Potter are entitled to partial final judgment and I will grant Defendants' Rule 54(b) motion.

### IV.   Conclusion

For the foregoing reasons, I will deny in part the motion for summary judgment as to Claims 1, 4, and 5, and I will grant in part the motion as to Claims 2 and 3. I will refer the case to the Honorable Joel C. Hoppe, United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(B), for conduct of further proceedings, including an evidentiary hearing and preparation of a Report and Recommendation, in order to resolve the dispute regarding whether or not the established grievance procedures were available to Thompson. Furthermore, I will grant the Rule 54(b) motion as to Defendants Tolbert, Hall, Wells, Shaffer, and Potter.

An appropriate order will be entered this day.

**ENTER** this 30th day of March, 2019.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE